UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JAMES HARDY a/k/a "J Rock,"                    :

               Petitioner,        :      11 Civ. 8382, 10 Cr. 1123 (JSR) (AJP)

         -against-                :      **REPORT AND RECOMMENDATION**

UNITED STATES OF AMERICA,               :

              Respondent.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Jed S. Rakoff, United States District Judge:**

      James Hardy has filed a pro se petition under 28 U.S.C. § 2255 to vacate his sentence of 156 months imprisonment for conspiracy to commit a Hobbs Act robbery, commission of a Hobbs Act robbery, and conspiracy to distribute marijuana. (Dkt. No. 1: Pet. ¶¶ 1-4.)[1] Hardy asserts that: (1) "the District Court lacked subject-matter jurisdiction to enter judgement against Hardy for his Hobbs Act convictions" because there was no allegation that the marijuana moved in interstate commerce (Pet. ¶ 12(A)) and (2) his "attorney provided ineffective assistance for allowing him to plead guilty before assuring that the Court's jurisdiction was proper" (Pet. ¶ 12(B)). (See generally Dkt. No. 2: Hardy Br.; Dkt. No. 13: Hardy Reply Br.)

      For the reasons set forth below, Hardy's petition should be DENIED.

---

[1]    References to "Dkt. No." are to the docket entries in 11 Civ. 8382. References to docket entries in Hardy's criminal case are indicated as "10 Cr. 1123, Dkt. No. __."

## FACTS

On November 9, 2010, a grand jury indicted and charged Hardy in Count One with conspiring to commit Hobbs Act robbery that "would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce"; Count Two with committing a Hobbs Act robbery affecting commerce by stealing $1,000, "one-half kilogram of marijuana, and a flat-screen television"; Count Three with conspiring to distribute marijuana; and Count Four with using a firearm in connection with the crimes charged in Counts One through Three. (10 Cr. 1123, Dkt. No. 6: Indictment.)

**Hardy's Plea Agreement**

On March 17, 2011, Hardy entered into a plea agreement with the Government to plead guilty to Counts One, Two and Three of the indictment. (Dkt. No. 10: Gov't Opp. Br. Ex. B: Plea Agmt. at 1.) The plea agreement stipulated that "the Government will move to dismiss any open Counts against the defendant," i.e. Count Four. (Plea Agmt. at 2.) Hardy and the Government stipulated to a Sentencing Guidelines range of 135 to 168 months. (Plea Agmt. at 4.) The plea agreement further provided that Hardy would "not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence within or below the Stipulated Guidelines Range of 135 to 168 months of imprisonment." (Plea Agmt. at 5-6.) Hardy also "acknowledge[d] that he has accepted this Agreement and decided to plead guilty because he is in fact guilty." (Plea Agmt. at 6.)

## Guilty Plea Allocution and Sentencing

On March 21, 2011, Hardy pled guilty to Counts One, Two and Three of the indictment before Judge Jed S. Rakoff. (10 Cr. 1123, Dkt. No. 18: 3/21/11 Plea Transcript ["P."].) Judge Rakoff asked, "Now, you are represented by Mr. Komaroff. Are you satisfied with his representation?" (P. 6.) Hardy replied, "Yes, sir." (P. 6.) Judge Rakoff inquired further: "Have you had a full opportunity to discuss this matter" with attorney Komaroff and "have you told him everything you know about this matter?" (P. 6.) Hardy replied, "Yes, sir" to both questions. (P. 6.) Hardy confirmed that he wanted to withdraw his prior not guilty plea and plead guilty to Counts One, Two and Three. (P. 6.) Hardy stated that he understood that he was waiving his right to a jury trial and related rights. (P. 6-8.)

Judge Rakoff described the crimes charged in Counts One through Three, and Hardy affirmed that he understood the charges (and penalties), as follows:

Q. Now, Count 1 of the indictment charges you with conspiring, in other words, agreeing with at least one other person, to commit robbery that had an effect on interstate commerce in that you and others agreed to rob someone believed to be in possession of narcotics or narcotics proceeds.

. . . .

Q. Mr. Mr. [sic] Hardy, you have gone over Count 1 with your counsel; yes.

A. Yes.

Q. You understand the charge against you in Count 1?

A. Yes, sir.

. . . .

Q. Now, Count 2 charges that in around May of 2010, in the Southern District of New York, you, in fact, did, along with others, commit a robbery with interstate implications in that you and others robbed at gunpoint a marijuana dealer in the Bronx and took from him or actually in that robbery about a thousand dollars, half a kilogram of marijuana and a flat screen television, and that part of that involved handcuffing and beating the victim on the face and the head with guns.

And you have gone over Count 2 with your attorney?

A. Yes, sir.

Q. And you understand the charge against you in Count 2?

A. Yes, sir.

. . . .

Q. Now, finally, Count 3 charges you with, again, a conspiracy, an agreement with one or more other persons, in this case to distribute and possess with intent to distribute a detectable amount of marijuana.

And you have gone over that charge with your counsel; yes?

A. Yes, sir.

Q. And you understand that charge as well; yes?

A. Yes.

(P. 8-10.)

Hardy acknowledged that he read the plea agreement, discussed it with his lawyer, understood its terms and signed it to indicate his agreement. (P. 13-14.) Hardy further acknowledged that, in signing the plea agreement, he had agreed that if Judge Rakoff sentenced him "to 168 months or less [he would] not appeal or otherwise attack [his] sentence." (P. 15.)

Hardy admitted that he knowingly agreed with another individual to commit a robbery and committed the robbery with that individual in the Bronx. (P. 16-17, 19.) He admitted to using a gun, stealing approximately half a kilogram of marijuana and a flat screen television, and handcuffing and beating the victim with a gun. (P. 18-19.) Hardy also admitted to possession with intent to distribute the stolen marijuana. (P. 19.) Hardy stated that he knew his actions were illegal and wrong at the time he committed them. (P. 17, 19.)

Regarding the interstate commerce element of the Hobbs Act robbery, the following colloquy occurred between Judge Rakoff and Assistant U.S. Attorney Laurie Korenbaum:

> THE COURT: Does the government represent that if this case would go to trial it would through competent evidence prove every essential element of each of these three offenses beyond a reasonable doubt?
>
> [AUSA] KORENBAUM: Yes, the government could do that.
>
> . . . .
>
> THE COURT: And does the government represent that it could show that the contemplated robbery would obstruct, delay and affect interstate commerce?
>
> MS. KORENBAUM: Yes, your Honor, we do.
>
> THE COURT: How would you do that?
>
> MS. KORENBAUM: Well, we would present testimony, your Honor, through persons who have knowledge of the illegal drug trade, which is marijuana. We would also present testimony of a victim that was stolen from him and also a TV. We would also present laboratory results proffering what the substance was.
>
> THE COURT: I'm talking just about the interstate aspect.
>
> MS. KORENBAUM: That's what I'm talking about, your Honor. Through those type --

THE COURT:  Laboratory results proving what the substance was would prove interstate commerce?

MS. KORENBAUM:  Yes, because it is narcotics, your Honor, is relevant as to whether interstate commerce would be affected, so through those types of evidence we would show the interstate element.

(P. 16, 17.)

Hardy entered a plea of guilty.  (P. 20-21.)  Judge Rakoff accepted the plea, directed the preparation of a pre-sentence report, and set a date for sentencing.  (P. 21-22.)

Sentencing occurred before Judge Rakoff on July 11, 2011.  (10 Cr. 1123, Dkt. No. 21: 7/11/11 Sentencing Transcript ["S."].)  Hardy's counsel and the Probation Office had recommended a sentence at the low end of the guidelines, 135 months, while the Government recommended a sentence at the top end of the guidelines, 168 months.  (S. 3.)  Noting the "seriousness of the crime, the viciousness of the crime, and the history of the defendant," Judge Rakoff sentenced Hardy to 156 months imprisonment.  (S. 21-22; <u>see also</u> 10 Cr. 1123, Dkt. No. 20: 7/19/11 Judgment.)

## Hardy's Current § 2255 Petition

Hardy's § 2255 petition asserts that:  (1) "the District Court lacked subject-matter jurisdiction to enter judgement against Hardy for his Hobbs Act convictions" (Dkt. No. 1: Pet. ¶ 12(A); <u>see</u> Dkt. No. 2: Hardy Br. at 5-10) and (2) "Hardy's attorney provided ineffective assistance" as he knew, or should have known that Hardy's conduct did not interfere with interstate commerce (Pet. ¶ 12(B); Hardy Br. at 11-15).

## ANALYSIS

To prevail on a 28 U.S.C. § 2255 petition, a petitioner must show that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," or (2) "the court was without jurisdiction to impose such sentence," or (3) "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[2]

## I. HARDY'S CLAIMS THAT THE DISTRICT COURT LACKED SUBJECT MATTER JURISDICTION AND THAT THERE WAS NOT A FACTUAL BASIS FOR HIS PLEA SHOULD BE DENIED

Hardy asserts that "the District Court lacked subject-matter jurisdiction to enter judgement against [him] for his Hobbs Act convictions." (Dkt. No. 1: Pet. ¶ 12(A); Dkt. No. 2: Hardy Br. at 5-10; Dkt. No. 13: Hardy Reply Br. at 3-11.) Specifically, Hardy claims that the Government's proffer regarding the interstate commerce element during the plea allocution was insufficient, and thus failed to confer federal jurisdiction (Hardy Br. at 5-7; Hardy Reply Br. at 3-6), and that his plea lacked an adequate factual basis (Hardy Br. at 7-9; Hardy Reply Br. at 6-11). The Government argues that Hardy's claim is barred because he specifically waived his right to collaterally attack his conviction by pleading guilty to these offenses. (Dkt. No. 10: Gov't Opp. Br. at 13-15.) In addition, the Government argues that Hardy cannot raise his claim for the first time in a § 2255 petition and in any event, it is meritless. (Gov't Opp. Br. at 15-17.)

---

[2] See, e.g., United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009), cert. denied, 130 S. Ct. 1090 (2010); Garcia v. United States, 08 Civ. 3900, 2009 WL 102136 at *3 (S.D.N.Y. Jan. 15, 2009).

## A.    Subject Matter Jurisdiction with Respect to Guilty Pleas

"A defendant who pleads guilty unconditionally admits all elements of the formal charge and, in the absence of court-approved reservation of issues for appeal, waives all challenges to prosecution except those going to the court's jurisdiction." United States v. Lasaga, 328 F.3d 61, 63 (2d Cir. 2003); see, e.g., United States v. Hsu, No. 09-4152-CR, --- F. 3d ----, 2012 WL 516199 at *4 (2d Cir. Feb. 17, 2012); United States v. Gjini, 419 F. App'x 4, 7 (2d Cir.), cert. denied, 132 S. Ct. 787 (2011); United States v. Frederick, 382 F. App'x 58, 60 (2d Cir. 2010), cert. denied, 132 S. Ct. 282 (2011).[3/]

"The alleged jurisdictional defect must 'go to the court's power to entertain the prosecution,' not to 'the government's ability to prove its case.'" United States v. Gjini, 419 F. App'x at 7 (quoting Hayle v. United States, 815 F.2d 879, 882 (2d Cir. 1987)).  "If the indictment alleges all of the statutory elements of a federal offense and the defendant's contention is that in fact certain of those elements are lacking, the challenge goes to the merits of the prosecution, not to the jurisdiction of the court to entertain the case or to punish the defendant . . . ." Hayle v. United States, 815 F.2d at 882; see, e.g., United States v. Gjini, 419 F. App'x at 7; United States v. Rammelkamp, 270 F. App'x 35, 37 (2d Cir.), cert. denied, 555 U.S. 889, 129 S. Ct. 326 (2008).[4/]

---

[3/]    See also, e.g., United States v. Seminerio, 680 F. Supp. 2d 523, 530 (S.D.N.Y. 2010); Nasso v. United States, No. CV-08-1015, 2005 WL 2591870 at *1 (E.D.N.Y. Oct. 13, 2005); Wong v. Ashcroft, 369 F. Supp. 2d 483, 487 (S.D.N.Y. 2005) (Chin, D.J.); Chang v. United States, 305 F. Supp. 2d 198, 203 (E.D.N.Y. 2004).

[4/]    See also, e.g., United States v. Seminerio, 08 Cr. 1238, 2010 WL 3341887 at *5 & n.6 (S.D.N.Y. Aug. 20, 2010); United States v. Berger, 188 F. Supp. 2d 307, 336 (S.D.N.Y. 2002); Pollack v. Hobbs, 98 F. Supp. 2d 287, 294 (E.D.N.Y. 2000) (Raggi, D.J.), aff'd, 8 F. App'x 37 (2d Cir. 2001).

Thus, after a guilty plea, jurisdiction can only be challenged if "the face of the indictment discloses that the count or counts to which he pleaded guilty failed to charge a federal offense." <u>Hayle</u> v. <u>United States</u>, 815 F.2d at 881; <u>see</u>, <u>e.g.</u>, <u>United States</u> v. <u>Gjini</u>, 419 F. App'x at 7.

The indictment charged Hardy with conspiracy to commit and commission of a Hobbs Act robbery, tracking the language of the Hobbs Act, thus satisfying the jurisdictional requirement. (<u>See</u> 10 Cr. 1123, Dkt. No. 6: Indictment, quoted on page 2 above.) "In order to state an offense, [a]n indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him . . . ." <u>United States</u> v. <u>Flaharty</u>, 295 F.3d 182, 198 (2d Cir.) (quotations & citations omitted), <u>cert. denied</u>, 537 U.S. 936, 123 S. Ct. 37 (2002).[5/] Hardy's argument, that the Government never "allege[d] that the purported marijuana traveled in interstate commerce, or that it was destined to be delivered to another state" (Dkt. No. 13: Hardy Reply Br. at 5), is misplaced because in the indictment, the Government need only track the statutory language, which it did.

Accordingly, Hardy's claim that the Court lacked subject matter jurisdiction should be <u>DENIED</u>.

**B.**      **Federal Rule of Criminal Procedure 11**

Notwithstanding Hardy's appeal and collateral attack waiver, "'a defendant retains the right to contend that there were errors in the proceedings that led to the acceptance of his plea of guilty,' and he may argue that the district court failed to satisfy the requirement that there is a

---

[5/]      <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Price</u>, 443 F. App'x 576, 580 (2d Cir. 2011); <u>United States</u> v. <u>Kalish</u>, 403 F. App'x 541, 544 (2d Cir. 2010); <u>United States</u> v. <u>Yannotti</u>, 541 F.3d 112, 127 (2d Cir. 2008), <u>cert. denied</u>, 129 S. Ct. 1648 (2009); <u>United States</u> v. <u>Frias</u>, 521 F.3d 229, 235 (2d Cir.), <u>cert. denied</u>, 555 U.S. 922, 129 S. Ct. 289 (2008).

factual basis for the plea." <u>United States</u> v. <u>Adams</u>, 448 F.3d 492, 497 (2d Cir. 2006) (citation omitted); <u>see</u> Fed. R. Crim. P. 11(b)(3).[6/] Despite Hardy's enforceable appeal waiver, the Court must address Hardy's claim that there was not a factual basis for his plea.

It is well-established law, however, that a § 2255 claim cannot be used as a substitute for a direct appeal, and that a claim that could have been raised on direct appeal is cognizable under § 2255 only under the "cause and prejudice" standard. As the Second Circuit has held:

> A § 2255 petition may not be used as a substitute for direct appeal. <u>United States</u> v. <u>Frady</u>, 456 U.S. 152, 165, 102 S. Ct. 1584, 1593, 71 L. Ed. 2d 816 (1982). . . . In order to raise a claim that could have been raised on direct appeal, a § 2255 petitioner must show cause for failing to raise the claim at the appropriate time and prejudice from the alleged error. <u>Campino</u> v. <u>United States</u>, 968 F.2d 187, 190 (2d Cir. 1992). The Supreme Court has stated that "'cause' under the cause and prejudice test must be something <u>external</u> to the petitioner, something that cannot be fairly attributed to him." <u>Coleman</u> v. <u>Thompson</u>, 501 U.S. 722, [751-53], 111 S. Ct. 2546, 2566, 115 L. Ed. 2d 640 (1991).

<u>Marone</u> v. <u>United States</u>, 10 F.3d 65, 67 (2d Cir. 1993); <u>see also</u>, <u>e.g.</u>, <u>Massaro</u> v. <u>United States</u>, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693 (2003); <u>United States</u> v. <u>Frady</u>, 456 U.S. at 165, 167, 102 S. Ct. at 1593, 1594 ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal. . . . We believe the proper standard for review of [petitioner's § 2255] motion is the 'cause and actual prejudice' standard . . . ." (citing cases)); <u>United States</u> v. <u>Timmreck</u>, 441 U.S. 780, 783-84, 99 S. Ct. 2085, 2087 (1979) (A Rule 11 "violation is neither constitutional nor

---

[6/]    <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Reap</u>, 391 F. App'x 99, 103 (2d Cir. 2010), <u>cert. denied</u>, 131 S. Ct. 3040 (2011); <u>United States</u> v. <u>Hines</u>, 316 F. App'x 54, 55 (2d Cir. 2009); <u>United States</u> v. <u>Graziano</u>, 306 F. App'x 693, 694 (2d Cir. 2009); <u>Nasso</u> v. <u>United States</u>, No. CV-05-1015, 2005 WL 2591870 at *1 (E.D.N.Y. Oct. 13, 2005).

jurisdictional," and thus "there is no basis here for allowing collateral attack 'to do service for an appeal.'").[7/]

Hardy's present Rule 11 claim could have been raised on direct appeal, but was not. (See cases cited on pages 9-10 & n.6 above.)  Because this claim was not raised on direct appeal, it is procedurally barred.  See, e.g., Zhang v. United States, 506 F.3d at 166.  In any event, Hardy's Rule 11 claim is meritless.

### 1.   Legal Principles Regarding Federal Rule of Criminal Procedure 11

Federal Rule of Criminal Procedure 11(b)(3) requires that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."  Fed. R. Crim. P. 11(b)(3).[8/]  The court must "inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading."  Fed. R. Crim. P. 11(b)(1)(G), and "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty."  United States v. Maher,

---

[7/]    See also United States v. Thorn, 659 F.3d 227, 231 (2d Cir. 2011); Zhang v. United States, 506 F.3d 162, 166 (2d Cir. 2007); United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998); United States v. Canady, 126 F.3d 352, 359 (2d Cir. 1997), cert. denied, 522 U.S. 1134, 118 S. Ct. 1092 (1998); United States v. Pipitone, 67 F.3d 34, 38 (2d Cir. 1995); Douglas v. United States, 13 F.3d 43, 46 (2d Cir. 1993); Naut v. United States, 06 Cr. 0601, 10 Civ. 7563, 2011 WL 3370398 at *3 (S.D.N.Y. Aug. 3, 2011) (§ 2255 Rule 11 claim procedurally barred because "Petitioner did not preserve these issues by raising them on appeal").

[8/]    See, e.g., United States v. Mends, 412 F. App'x 370, 371 (2d Cir. 2011); United States v. Hines, 316 F. App'x 54, 56 (2d Cir. 2009); Maggiore v. United States, 302 F. App'x 17, 19 (2d Cir. 2008).

108 F.3d 1513, 1524 (2d Cir. 1997).[9/]  "If [the Court] decides there was no factual basis for a guilty plea after accepting it, the court should vacate the plea and enter a plea of not guilty on behalf of the defendant."  United States v. Smith, 160 F.3d 117, 121 (2d Cir. 1998).[10/]

To establish a factual basis, the Court "may rely on representations of 'the defendant, of the attorneys for the government and the defense, [or] of the presentence report . . . ,' and indeed may use 'whatever means is appropriate in a specific case.'"  United States v. Culbertson, 2012 WL 335765 at *6; see, e.g., United States v. Benn, 437 F. App'x 21, 22 (2d Cir. 2011); United States v. Gjini, 419 F. App'x at 6; United States v. Hines, 316 F. App'x at 56; United States v. Graziano, 306 F. App'x at 694; United States v. Torrellas, 455 F.3d 96, 99 (2d Cir. 2006).[11/]

### 2.    Application to Hardy's Claim that His Plea Lacked a Factual Basis

Hardy claims that "at Hardy's plea hearing the government did not allege, nor prove that said marijuana ever travelled in interstate commerce, or was destined for out-of-state clientele,"

---

[9/]    See, e.g., United States v. Culbertson, No. 10-1766-CR, --- F.3d ----, 2012 WL 335765 at *6 (2d Cir. Feb. 16, 2012); United States v. Gjini, 419 F. App'x 4, 6 (2d Cir.), cert. denied, 132 S. Ct. 787 (2011); United States v. Mends, 412 F. App'x at 372; United States v. Garcia, 587 F.3d 509, 514 (2d Cir. 2009); United States v. Hines, 316 F. App'x at 56; United States v. Graziano, 306 F. App'x 693, 694 (2d Cir. 2009); Maggiore v. United States, 302 F. App'x at 19; Reytan v. United States, 99 Cr. 0214-09, 04 Civ. 3635, 2006 WL 1311955 at *3 (S.D.N.Y. May 12, 2006); Chang v. United States, 305 F. Supp. 2d 198, 202 (E.D.N.Y. 2004).

[10/]    See, e.g., United States v. Culbertson, 2012 WL 335765 at *6 n.4; United States v. Arias, 409 F. Supp. 2d 281, 305 (S.D.N.Y. 2005) (Lynch, D.J.).

[11/]    See also, e.g., Naut v. United States, 06 Cr. 0601, 10 Civ. 7563, 2011 WL 3370398 at *4 (S.D.N.Y. Aug. 3, 2011); Javier v. United States, 590 F. Supp. 2d 560, 561 (S.D.N.Y. 2008); Vasquez v. United States, 08 Civ. 0860, 05 Cr. 0562, 2008 WL 4787505 at *2 (S.D.N.Y. Oct. 30, 2008); Reytan v. United States, 2006 WL 1311955 at *3.

relying on United States v. Parkes, 497 F.3d 220 (2d Cir. 2007), cert. denied, 552 U.S. 1220, 128 S. Ct. 1320 (2008), and United States v. Needham, 604 F.3d 673 (2d Cir.), cert. denied, 131 S. Ct. 355 (2010).  (Dkt. No. 1: Pet. ¶ 12(A); Dkt. No. 2: Hardy Br. at 5-9; Dkt. No. 13: Hardy Reply Br. at 6-11.)

　　　　　To sustain a Hobbs Act conviction, the government must prove that the defendant's conduct "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . or attempts or conspires so to do."  18 U.S.C. § 1951(a); see, e.g., United States v. Needham, 604 F.3d at 677, 679 ("Only this 'jurisdictional nexus transforms the quintessential state crimes of robbery and extortion into federal crimes.'"); United States v. Parkes, 497 F.3d at 226-27 ("'In a Hobbs Act prosecution, proof that commerce was affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference.'"); United States v. Wilkerson, 361 F.3d 717, 726 (2d Cir.) (same), cert. denied, 543 U.S. 908, 125 S. Ct. 225 (2004); United States v. Arena, 180 F.3d 380, 389 (2d Cir.1999), cert. denied, 531 U.S. 811, 121 S. Ct. 33 (2000); United States v. Leslie, 103 F.3d 1093, 1103 (2d Cir.) ("There is nothing more crucial, yet so strikingly obvious, as the need to prove the jurisdictional element of a crime."), cert. denied, 520 U.S. 1220, 117 S. Ct. 1713 (1997).

　　　　　"[T]he required showing of an effect on interstate commerce is de minimis."  United States v. Parkes, 497 F.3d at 230.[12/]  To establish the jurisdictional nexus, "all that need be shown

---

[12/]　　See, e.g., United States v. Silverio, 335 F.3d 183, 186 (2d Cir. 2003); United States v. Elias, 285 F.3d 183, 188 (2d Cir.), cert. denied, 537 U.S. 988, 123 S. Ct. 430 (2002); Rodriguez v. United States, 10 Civ. 5259, 2011 WL 4406339 at *4 (S.D.N.Y. Sept. 22, 2011); Garcia
(continued...)

is the possibility or potential of an effect on interstate commerce, not an actual effect." <u>United States</u> v. <u>Jones</u>, 30 F.3d 276, 285 (2d Cir.), <u>cert. denied</u>, 513 U.S. 1028, 115 S. Ct. 602 (1994).[13/]

During the plea allocution, the Government proffered that it would prove the interstate commerce element beyond a reasonable doubt if the case went to trial.  (<u>See</u> page 5 above.)  A.U.S.A. Korenbaum stated that the Government "would present testimony . . . through persons who have knowledge of the illegal drug trade, which is marijuana.  We would also present testimony of a victim that was stolen from him and also a TV.  We would also present laboratory results proffering what the substance was." (<u>See</u> page 5 above.)  While the Government could have been more articulate and detailed in its proffer, the Government's proffer that it would present testimony "through persons who have knowledge of the illegal [marijuana] drug trade" and testimony of the victim was sufficient to meet the de minimis requirement.  <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Parkes,</u> 497 F.3d at 231 (A "reasonable juror . . . could have found that the attempted robbery of [a local, part-time marijuana dealer's] marijuana or proceeds would have affected interstate

---

[12/]     (...continued)
v. <u>United States</u>, 08 Civ. 3900, 2009 WL 102136 at *5 (S.D.N.Y. Jan. 15, 2009); <u>Chang</u> v. <u>United States</u>, 305 F. Supp. 2d 198, 201 (E.D.N.Y. 2004).

[13/]     <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Needham</u>, 604 F.3d at 680, 682 ("In Hobbs Act cases, an interstate nexus may be demonstrated where the government introduces evidence that the robbery was of a business (legal or illegal) that (1) serves out-of-state customers; (2) purchases 'a commodity that travels in interstate commerce'; or (3) purchases goods in-state that originated out-of-state." (citations omitted)); <u>United States</u> v. <u>Parkes</u>, 497 F.3d at 230; <u>United States</u> v. <u>Angelilli</u>, 660 F.2d 23, 35 (2d Cir. 1981) ("The jurisdictional requirement of the Hobbs Act may be satisfied by a showing of a very slight effect on interstate commerce. Even a potential or subtle effect on commerce will suffice." (citation omitted)), <u>cert. denied</u>, 455 U.S. 910, 102 S. Ct. 1258 (1982); <u>see also</u>, <u>e.g.</u>, <u>Rodriguez</u> v. <u>United States</u>, 2011 WL 4406339 at *4; <u>Garcia</u> v. <u>United States</u>, 2009 WL 102136 at *5.

commerce 'in any way or degree'" because "an experienced narcotics investigator testified that marijuana 'is almost exclusively trucked into the United States, predominantly through Mexico' and that '[v]ery little' marijuana is grown in New York."); <u>Garcia</u> v. <u>United States</u>, 2009 WL 102136 at *2, *6 (denying § 2255 petition and concluding that "a reasonable trier of fact could conclude that stealing clothing and compact discs would have an effect on interstate commerce" where the "Government proffered that it could prove that the stolen goods had traveled through interstate commerce"); <u>Vasquez</u> v. <u>United States</u>, 08 Civ. 0860, 05 Cr. 0562, 2008 WL 4787505 at *2 (S.D.N.Y. Oct. 30, 2008) (prosecutor's proffer that if the case went to trial it would prove that all "'cocaine . . . is grown outside the United States,'" was sufficient to satisfy the interstate commerce element).[14/]

Because the Government proffered that, as in <u>Parkes</u>, it would present testimony from persons with knowledge of the illegal marijuana trade which would satisfy the interstate commerce element, Hardy's claim that Judge Rakoff lacked a factual basis for accepting his guilty plea should be <u>DENIED</u>.

---

[14/]     <u>See also</u>, <u>e.g.</u>, <u>United States</u> v. <u>Chen</u>, 06 Civ. 2243, 03 Cr. 0567, 2006 WL 2853892 at *7 (S.D.N.Y. Oct. 6, 2006) (Chin, D.J.) (denying § 2255 petition where petitioner was notified of the Government's burden regarding the interstate commerce element during the plea allocution and "waived his right to trial, and through his attorney, declined to contest the elements of interstate commerce"); <u>compare</u> <u>United States</u> v. <u>Needham</u>, 604 F.3d at 676 (reversing Hobbs Act conviction by jury where "the government did not offer any proof that would demonstrate an interstate nexus, however slight or subtle, for the marijuana robberies").

**II.** **HARDY'S CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL IN CONNECTION WITH HIS GUILTY PLEA IS WITHOUT MERIT**

    **A.** **The Strickland v. Washington Standard on Ineffective Assistance of Counsel**

In Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), the Supreme Court announced a two-part test to determine if counsel's assistance was ineffective: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S. Ct. at 2064.[15/] This performance is to be judged by an objective standard of reasonableness. Strickland v. Washington, 466 U.S. at 688, 104 S. Ct. at 2064.[16/] The "'purpose of the effective assistance guarantee of the Sixth Amendment is . . . simply to ensure that criminal defendants receive a fair trial.' Thus, '[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (quoting Strickland v. Washington, 466 U.S. at 686, 689, 104 S. Ct. at 2063, 2065) (citation omitted).

---

[15/]    Accord, e.g., Harrington v. Richter, 131 S. Ct. 770, 787 (2011); Premo v. Moore, 131 S. Ct. 733, 739 (2011); Wiggins v. Smith, 539 U.S. 510, 521, 123 S. Ct. 2527, 2535 (2003); Bell v. Miller, 500 F.3d 149, 156-57 (2d Cir. 2007); Henry v. Poole, 409 F.3d 48, 62-63 (2d Cir. 2005), cert. denied, 547 U.S. 1040, 126 S. Ct. 1622 (2006).

[16/]    Accord, e.g., Harrington v. Richter, 131 S. Ct. at 787; Wiggins v. Smith, 539 U.S. at 521, 123 S. Ct. at 2535; Bell v. Cone, 535 U.S. 685, 695, 122 S. Ct. 1843, 1850 (2002); Henry v. Poole, 409 F.3d at 63.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction . . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Strickland v. Washington, 466 U.S. at 689, 104 S. Ct. at 2065 (citation omitted).[17] Ineffective assistance claims "are quite often the law's equivalent of 'buyer's remorse' or 'Monday morning quarterbacking' . . . . Decisions by criminal defense counsel are often choices among bad alternatives . . . ." Mui v. United States, 614 F.3d 50, 57 (2d Cir. 2010); accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403; Harrington v. Richter, 131 S. Ct. at 788 ("It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'"). Petitioner's "burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed to the defendant by the Sixth Amendment." Harrington v. Richter, 131 S. Ct. at 787 (quotations omitted).

Second, the defendant must show prejudice from counsel's performance. Strickland v. Washington, 466 U.S. at 687, 104 S. Ct. at 2064; accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403. The "question is whether there is a reasonable probability that, absent the errors, the fact

---

[17] Accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403; Harrington v. Richter, 131 S. Ct. at 787-88; Bell v. Cone, 535 U.S. at 698, 122 S. Ct. at 1852; Bierenbaum v. Graham, 607 F.3d 36, 50-51 (2d Cir. 2010), cert. denied, 131 S. Ct. 1693 (2011); Bell v. Miller, 500 F.3d at 156-57; Henry v. Poole, 409 F.3d at 63; Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001); Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001).

finder would have had a reasonable doubt respecting guilt." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 695, 104 S. Ct. at 2068-69. Put another way, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694, 104 S. Ct. at 2068.[18/]

The Supreme Court has counseled that these principles "do not establish mechanical rules." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 696, 104 S. Ct. at 2069. The focus of the inquiry

---

[18/] See also, e.g., <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 534, 123 S. Ct. at 2542; <u>Bell</u> v. <u>Cone</u>, 535 U.S. at 695, 122 S. Ct. at 1850; <u>Mosby</u> v. <u>Senkowski</u>, 470 F.3d 515, 519 (2d Cir. 2006), <u>cert. denied</u>, 552 U.S. 836, 128 S. Ct. 75 (2007); <u>Henry</u> v. <u>Poole</u>, 409 F.3d at 63-64; <u>Aparicio</u> v. <u>Artuz</u>, 269 F.3d at 95; <u>Sellan</u> v. <u>Kuhlman</u>, 261 F.3d at 315; <u>DeLuca</u> v. <u>Lord</u>, 77 F.3d 578, 584 (2d Cir.), <u>cert. denied</u>, 519 U.S. 824, 117 S. Ct. 83 (1996).

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 694, 104 S. Ct. at 2068; <u>accord</u>, <u>e.g.</u>, <u>Cullen</u> v. <u>Pinholster</u>, 131 S. Ct. at 1403; <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 787; <u>Wiggins</u> v. <u>Smith</u>, 539 U.S. at 534, 123 S. Ct. at 2542; <u>Bierenbaum</u> v. <u>Graham</u>, 607 F.3d at 51. The phrase "reasonable probability," despite its language, should not be confused with "'more likely than not.'" <u>Strickler</u> v. <u>Greene</u>, 527 U.S. 263, 289-91, 119 S. Ct. 1936, 1952-53 (1999); <u>accord</u>, <u>e.g.</u>, <u>Harrington</u> v. <u>Richter</u>, 131 S. Ct. at 792; <u>Kyles</u> v. <u>Whitley</u>, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995); <u>Nix</u> v. <u>Whiteside</u>, 475 U.S. 157, 175, 106 S. Ct. 988, 998 (1986) ("[A] defendant need not establish that the attorney's deficient performance more likely than not altered the outcome in order to establish prejudice under <u>Strickland</u>."); <u>Strickland</u> v. <u>Washington</u>, 466 U.S. at 694, 104 S. Ct. at 2068 ("The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."). Rather, the phrase "reasonable probability" seems to describe a fairly low standard of probability, albeit somewhat more likely than a "reasonable possibility." <u>Strickler</u> v. <u>Greene</u>, 527 U.S. at 291, 119 S. Ct. at 1953; <u>cf.</u> <u>id.</u> at 297-301, 119 S. Ct. at 1955-58 (Souter, J., concurring & dissenting) (arguing that any difference between "reasonable probability" and "reasonable possibility" is "slight").

should be on the fundamental fairness of the trial and whether, despite the strong presumption of reliability, the result is unreliable because of a breakdown of the adversarial process.  Id.

Any counsel errors must be considered in the "aggregate" rather than in isolation, as the Supreme Court has directed courts "to look at the 'totality of the evidence before the judge or jury.'"  Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) (quoting Strickland v. Washington, 466 U.S. at 695-96, 104 S. Ct. at 2069); accord, e.g., Rodriguez v. Hoke, 928 F.2d 534, 538 (2d Cir. 1991).  "The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."  Harrington v. Richter 131 S. Ct. at 788; see also, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403 ("The [Supreme] Court acknowledged that '[t]here are countless ways to provide effective assistance in any given case,' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'").

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  Strickland v. Washington, 466 U.S. at 697, 104 S. Ct. at 2069.[19]

In addition, the Supreme Court has counseled that:

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed

---

[19]    Accord, e.g., Smith v. Robbins, 528 U.S. 259, 286 n.14, 120 S. Ct. 746, 764 n.14 (2000).

for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland v. Washington, 466 U.S. at 690-91, 104 S. Ct. at 2066.[20/]

"The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d at 199; accord, e.g., Cullen v. Pinholster, 131 S. Ct. at 1403 ("We take a 'highly deferential' look at counsel's performance."); Bierenbaum v. Graham, 607 F.3d at 50-51; Bell v. Miller, 500 F.3d at 156-57. "'Surmounting Strickland's high bar is never an easy task.'" Harrington v. Richter, 131 S. Ct. at 788 ("[T]he Strickland standard must be applied with scrupulous care" and "the standard for judging counsel's representation is a most deferential one.").

---

[20/] See also, e.g., Harrington v. Richter, 131 S. Ct. at 789-90 ("Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." Moreover, an "attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense."); Yarborough v. Gentry, 540 U.S. 1, 5-6, 124 S. Ct. 1, 4 (2003); Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 1575 (1982) ("We have long recognized . . . that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim."); Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998) ("In reviewing Strickland claims, courts are instructed to 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance' and that counsel's conduct was not the result of error but derived instead from trial strategy. We are also instructed, when reviewing decisions by counsel, not to 'second-guess reasonable professional judgments and impose on . . . counsel a duty to raise every "colorable" claim' on appeal." (citations omitted)); Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (a reviewing court "may not use hindsight to second-guess [counsel's] strategy choices"), cert. denied, 513 U.S. 820, 115 S. Ct. 81 (1994).

The <u>Strickland</u> standard also applies to ineffective assistance claims arising out of a guilty plea. <u>Hill</u> v. <u>Lockhart</u>, 474 U.S. 52, 58, 106 S. Ct. 366, 370 (1985).[21/] "In the context of a guilty plea, the prejudice requirement 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" <u>Moore</u> v. <u>United States</u>, 00 Civ. 4560, 98 Cr. 833, 2001 WL 253432 at *11 (S.D.N.Y. Mar. 15, 2001) (Peck, M.J.) (quoting <u>Hill</u> v. <u>Lockhart</u>, 474 U.S. at 59, 106 S. Ct. at 370).[22/]

---

[21/]  <u>See</u>, <u>e.g.</u>, <u>Wright</u> v. <u>Van Patten</u>, 552 U.S. 120, 128 S. Ct. 743, 746 (2008); <u>United States</u> v. <u>Doe</u>, 537 F.3d 204, 213-14 (2d Cir. 2008); <u>United States</u> v. <u>Jennings</u>, 282 F. App'x 37, 38 (2d Cir. 2008); <u>United States</u> v. <u>Arteca</u>, 411 F.3d 315, 320 (2d Cir. 2005); <u>United States</u> v. <u>Thomas</u>, 74 F. App'x 113, 115 (2d Cir. 2003), <u>cert. denied</u>, 541 U.S. 1019, 124 S. Ct. 2089 (2004).

[22/]  <u>Accord</u>, <u>e.g.</u>, <u>United States</u> v. <u>Gunn</u>, 419 F. App'x 106, 109 (2d Cir.), <u>cert. denied</u>, 132 S. Ct. 302 (2011); <u>United States</u> v. <u>Doe</u>, 537 F.3d at 214; <u>United States</u> v. <u>Arteca</u>, 411 F.3d at 320; <u>United States</u> v. <u>Garcia</u>, 57 F. App'x 486, 489 (2d Cir.), <u>cert. denied</u>, 538 U.S. 992, 123 S. Ct. 1815 (2003); <u>United States</u> v. <u>Couto</u>, 311 F.3d 179, 187 (2d Cir. 2002); <u>United States</u> v. <u>Coffin</u>, 76 F.3d 494, 498 (2d Cir.), <u>cert. denied</u>, 517 U.S. 1147, 116 S. Ct. 1445 (1996); <u>Tate</u> v. <u>Wood</u>, 963 F.2d 20, 26 (2d Cir. 1992); <u>Ventura</u> v. <u>Meachum</u>, 957 F.2d 1048, 1058 (2d Cir.1992); <u>Panuccio</u> v. <u>Kelly</u>, 927 F.2d 106, 108 (2d Cir. 1991); <u>Eber-Schmid</u> v. <u>Cuomo</u>, 09 Civ. 8036, 09 Civ. 8038, 2010 WL 1640905 at *18 (S.D.N.Y. Apr. 22, 2010) (Peck, M.J.); <u>Lear</u> v. <u>Poole</u>, 711 F. Supp. 2d 288, 298-99 (W.D.N.Y. 2010); <u>Whitted</u> v. <u>United States</u>, 07 Civ. 2174, 2009 WL 4906545 at * 2 (S.D.N.Y. Dec. 18, 2009); <u>Heyward</u> v. <u>Costello</u>, 91 Civ. 1570, 1994 WL 263426 at *3-4 (S.D.N.Y. June 13, 1994); <u>People</u> v. <u>McDonald</u>, 1 N.Y.3d 109, 115, 769 N.Y.S.2d 781, 785 (2003).

### B.    The Court Need Not Hold An Evidentiary Hearing

A district court should not dismiss a § 2255 petition without conducting an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.  Section 2255, however, "does not strip the district courts of all discretion to exercise their common sense." Machibroda v. United States, 368 U.S. 487, 495, 82 S. Ct. 510, 514 (1962).  Section 2255 provides that the "court may entertain and determine such motion without requiring the production of the prisoner at the hearing." 28 U.S.C. § 2255.  The Second Circuit has held that:

> It is within the district court's discretion to determine whether a hearing is warranted. Among the wealth of materials available to the district court at its direction are the trial record, letters, documents, exhibits, affidavits and written interrogatories.  After expanding the record, the district court then decides if an evidentiary hearing also is required.   Our precedent disapproves of summary dismissal of petitions where factual issues exist[], but it permits a "middle road" of deciding disputed facts on the basis of written submissions.

Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) (citations omitted); accord, e.g., United States v. Howard, 443 F. App'x 596, 600 (2d Cir. 2011), cert. denied, --- S. Ct. ----, 2012 WL 217787 (Feb. 21, 2012); Raysor v. United States, 647 F.3d 491, 494 (2d Cir. 2011); Campusano v. United States, 442 F.3d 770, 776 (2d Cir. 2006) ("As noted in Chang v. United States and Pham v. United States, the district court has discretion to determine if a testimonial hearing will be conducted." (citations omitted)); Chang v. United States, 250 F.3d 79, 85 (2d Cir. 2001) (Petitioner's "claim was not summarily dismissed by the district court.  At the request of the court, the record was supplemented by a detailed affidavit from trial counsel credibly describing the circumstances

concerning [petitioner's § 2255 claim]. We believe that with that submission the record was sufficient to support dismissal of the petition.").

Because the Court in this case has at its disposal the necessary plea and sentencing transcripts, the plea agreement, and affidavits from Hardy and Hardy's counsel, an evidentiary hearing is not necessary.

**C.    Application to Hardy's Ineffective Assistance of Counsel Claim**

Hardy claims that his plea was involuntary due to his counsel's ineffective assistance because his attorney "did not assure himself that the district court retained jurisdiction over Hardy," and his attorney did not "otherwise determine whether Hardy's alleged conduct amounted to the essential elements of a Hobbs Act robbery affecting interstate commerce." (Dkt. No. 1: Pet. ¶ 12(B); Dkt. No. 2: Hardy Br. at 11-13; Dkt. No. 13: Hardy Reply Br. at 11-17.)

At his plea allocution, Hardy confirmed that he was satisfied with attorney Komaroff's representation and that he had had enough time to discuss this matter with counsel. (See page 3 above.) Judge Rakoff described the crimes charged, including the interstate commerce nexus, specifically stating: "Count 1 of the indictment charges you with conspiring . . . to commit robbery that had an effect on interstate commerce" and "Count 2 charges that . . . you, in fact, did . . . commit a robbery with interstate implications." (See pages 3-4 above.) Hardy affirmed that he had discussed all three counts with his attorney and that he understood them. (See pages 3-4 above.) Hardy also was present when Judge Rakoff questioned the Government about the interstate commerce element of the Hobbs Act violations. (See pages 5-6 above.)

"As the Supreme Court has noted, statements made at plea allocutions carry a strong presumption of verity and constitute a formidable barrier in any subsequent collateral proceeding." Marcelin v. Garvin, 97 Civ. 2996, 1999 WL 977221 at *7 (S.D.N.Y. Oct. 26, 1999) (Peck, M.J.) (quotations omitted, quoting, inter alia, Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629 (1977)); accord, e.g., United States v. Grzybek, 283 F. App'x 843, 845 (2d Cir. 2008) ("It is well established that '[a] criminal defendant's self-inculpatory statements made under oath at this plea allocution carry a strong presumption of verity . . . and are generally treated as conclusive in the face of the defendant's later attempt to contradict them.'"); United States v. Laano, 58 F. App'x 859, 861 (2d Cir. 2003) ("A defendant who offers a claim of innocence to substantiate altering his plea must overcome 'the strong presumption of verity that attaches to his admissions of guilt at his plea allocution.'").[23]

---

[23] See, e.g., Adames v. United States, 171 F.3d 728, 732-33 (2d Cir. 1999) (statements at plea allocution "'carry a strong presumption of verity' and are generally treated as conclusive in the face of the defendant's later attempt to contradict them" (citing cases)); Reed v. Brown, 10 Civ. 3072, 2011 WL 498363 at *11 (S.D.N.Y. Feb. 14, 2011) (Peck, M.J.), report & rec. adopted, 2012 WL 34092 (S.D.N.Y. Jan. 6, 2012); Eber-Schmid v. Cuomo, 09 Civ. 8036, 09 Civ. 8038, 2010 WL 1640905 at *14 (S.D.N.Y. Apr. 22, 2010) (Peck, M.J.); United States v. Paredes-Acevedo, 04 Cr. 0363, 2008 WL 2743208 at *2 (S.D.N.Y. June 23, 2008) ("The defendant's statements . . . under oath at his plea allocution carry a strong presumption of verity . . . ." (quotations omitted)); United States v. Caesar, 94 Cr. 0059, 1995 WL 312443 at *3 (S.D.N.Y. May 23, 1995) ("The Court notes that statements made during a plea allocution carry a strong presumption of verity. Such statements are conclusive absent credible reason justifying departure from their apparent truth." (citations & quotations omitted)); United States v. Napolitano, 212 F. Supp. 743, 747 (S.D.N.Y. 1963) (Weinfeld, D.J.) ("The defendant's admissions . . . [at guilty plea] are solemn declarations; they are not to be lightly disregarded in favor of his present self-serving assertion . . . .").

Hardy's statements at his plea allocution control over his current, conclusory statements that counsel was ineffective. Hardy's plea colloquy made clear that he understood the consequences of pleading guilty and was making a voluntary and intelligent choice to do so rather than go to trial.

Attorney Komaroff submitted an affidavit explaining what he told Hardy about the interstate commerce element:

> Based on research I discussed at length with Mr. Hardy, I explained that the hurdle the government would have to clear at trial on the commerce element was very low. We specifically discussed the two main cases he cites in his petition, United States v. Parkes, 497 F.3d 220 (2d Cir. 2007), and United States v. Needham, 604 F.3d 673 (2d Cir. 2008). I also provided Mr. Hardy with copies of relevant cases. I never told Mr. Hardy that "robbing a drug dealer always affects interstate commerce and that the only thing the government had to prove was that Jason Cruz was a drug dealer in order to prove that I affected commerce." Hardy Aff. at ¶ 4. To the contrary, we discussed the fact that the victim being a marijuana dealer, as opposed to a cocaine or heroin dealer, did present an issue of proof for the government. However, we also discussed the fact that the hurdle for the government on this point was very low and could be satisfied by a showing of even a de minimis or potential effect on interstate commerce. The government could have proved this through testimony from the victim concerning an out of state source of supply, out of state customers, the fact that he crossed state lines in conducting his business, and/or the fact that the robbery depleted assets that would have purchased goods in interstate commerce. In addition, I expected the government to offer testimony concerning the unlikelihood that the marijuana was grown in New York based on allegations to that effect in the Complaint.

(Dkt. No. 10: Gov't Opp. Br. Ex. A: Komaroff Aff. ¶ 6.)

Komaroff also made clear that two factors convinced Hardy to plead guilty: Hardy's recorded conversation with his accomplice in which Hardy admitted to the crime (Komaroff Aff. ¶¶ 7-8), and Komaroff's plea negotiations which convinced the prosecutors to drop Count Four of

the indictment, which carried a mandatory seven year consecutive sentence (Komaroff Aff. ¶¶ 13-14).

In light of the strong proof of Hardy's guilt and the low burden the Government faced as to the interstate commerce element – which the Government represented at the plea allocution it would prove through testimony (as in <u>Parkes</u>) from an investigator familiar with the marijuana trade and/or with the victim's testimony – Hardy has not met his burden under <u>Strickland</u> of proving that counsel was ineffective. <u>See</u>, <u>e.g.</u>, <u>Rodriguez</u> v. <u>United States</u>, 10 Civ. 5259, 2011 WL 4406339 at *9 (S.D.N.Y. Sept. 22, 2011) (denying § 2255 ineffective assistance claim and finding counsel's stipulation that "'narcotics would interfere with interstate commerce in violation of the Hobbs Act'" was not unreasonable); <u>Naut</u> v. <u>United States</u>, 06 Cr. 0601, 10 Civ. 7563, 2011 WL 3370398 at *7 (S.D.N.Y. Aug. 3, 2011) (denying § 2255 ineffective assistance claim where "[d]uring the plea, the Court adequately described, and [petitioner] properly allocuted to, the elements of" the crime); <u>Cusano</u> v. <u>United States</u>, 05 Civ. 7177, 2007 WL 4142771 at *2 (S.D.N.Y. Nov. 16, 2007) (§ 2255 waiver upheld and ineffective counsel claims found to be meritless when contradicted by petitioner's statements at plea allocution that he understood plea agreement, was satisfied with counsel's representation and admitted to the elements of the crime.); <u>Reytan</u> v. <u>United States</u>, 99 Cr. 0214-09, 04 Civ. 3635, 2006 WL 1311955 at *3, *5 (S.D.N.Y. May 12, 2006) (denying § 2255 ineffective counsel claim where plea allocution had sufficient factual basis, "and as such, there were no issues for [defendant]'s counsel to raise with this Court").

Hardy has failed to overcome the "strong presumption" that Komaroff's conduct was reasonable or to show that Komaroff's advice "fell below an objective standard of reasonableness" measured by "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688-89, 104 S. Ct. 2052, 2064-65 (1984). Moreover, Hardy has failed to persuasively demonstrate that but for Komaroff's alleged deficiencies he would not have plead guilty and would have insisted on going to trial, in light of the significantly greater sentence he faced if convicted after trial. Hardy gained significant benefits from the plea agreement that Komaroff negotiated, by which Count Four which carried a mandatory minimum consecutive sentence of seven years was dropped. (See Gov't Opp. Br. at 21.)

Hardy's ineffective assistance of counsel claim should be DENIED.

## CONCLUSION

For the reasons set forth above, Hardy's petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence of 156 months imprisonment should be DENIED.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6.[24] Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable

---

[24]   If the pro se petitioner requires copies of any of the cases reported only in Westlaw, petitioner should request copies from opposing counsel. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.2.

Jed S. Rakoff, 500 Pearl Street, Room 1340, and to my chambers, 500 Pearl Street, Room 1370.

Any requests for an extension of time for filing objections must be directed to Judge Rakoff (with a courtesy copy to my chambers). Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:     New York, New York
           March 14, 2012

Respectfully submitted,

**Andrew J. Peck**
United States Magistrate Judge

Copies to:    James Hardy (Mail)
              A.U.S.A. Timothy Donald Sini (ECF)
              Judge Jed S. Rakoff